Evan Livingstone, SBN 252008
Law Office of Evan Livingstone
2585 Sebastopol Rd, Unit 7265
Santa Rosa, CA 95407
Phone (707) 280-2791
Fax    (707) 676-9112
Email: evanmlivingstone@gmail.com

Attorney for Debtor
Cynthia Ann Jacobsen AKA Cynthia Ann McCarn

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CYNTHIA ANN JACOBSEN AKA<br>CYNTHIA ANN MCCARN<br><br>    Debtor | Case No.    26-10257 WL<br>Chapter    13<br><br>**SUPPLEMENTAL DECLARATION OF DEBTOR CYNTHIA ANN JACOBSEN IN SUPPORT OF MOTION TO EXTEND THE AUTOMATIC STAY**<br><br>Date:  May 21, 2026<br>Time:  9:00 AM<br>Judge: Hon. William J. Lafferty, III<br>Place:  1300 Clay St, <u>Courtroom 220</u><br>           Oakland, CA 94612 |

I, CYNTHIA ANN JACOBSEN, declare as follows:

1.      I am the Debtor in the instant bankruptcy case. I make this declaration of my own personal knowledge, and if called as a witness, could and would testify thereto:

2.      On May 20, 2026, I signed a Residential Listing Agreement with Westgate Real Estate to sell my property at 8157 Mill Station Rd, Sebastopol CA 95472.

3.      A true copy of the Residential Listing Agreement is attached to this Declaration as Exhibit A.

4.      The Listing Price is $1,599,000.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on May 20, 2026 in Sebastopol, CA

<u>/s/Cynthia Ann Jacobsen</u>
Cynthia Ann Jacobsen
Debtor

# EXHIBIT A
## Residential Listing Agreement

Case: 26-10257   Doc# 22   Filed: 05/20/26   Entered: 05/20/26 20:54:56   Page 2 of 12

Authentisign ID: 730D0A53-BE54-F111-8FCA-000224435594744



# RESIDENTIAL LISTING AGREEMENT
## (Exclusive Authorization and Right to Sell)
### (C.A.R. Form RLA, Revised 12/25)



**Date Prepared:** _May 20, 2026_

1. **EXCLUSIVE RIGHT TO SELL:** _____ _Cynthia Mc Carn Jacobsen_ _____ ("Seller")
   hereby employs and grants _____ _Westgate Real Estate_ _____ ("Broker")
   the exclusive and irrevocable right to sell or exchange the real property described as _8157 Mill Station Road_ _____
   situated in _____ _Sebastopol_ _____ (City), _____ _Sonoma_ _____ (County), California, _95472_ (Zip Code),
   Assessor's Parcel No. _____061180044000_____ ("Property") for the Listing Period specified in **paragraph 2A(1).**

2. **TERMS OF LISTING AGREEMENT:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 7 pages. Seller is advised to read all 7 pages.

|  | Para # | Paragraph Title or Contract Term | Terms and Conditions |
|---|---|---|---|
| **A** |  | **Representation** | |
| **A(1)** | 4G | **Listing Period** (Maximum Length) | Beginning _05/20/2026_ (date) Ending at 11:59 P.M. on _11/19/2026_ (date) |
|  |  |  | (Not to exceed 24 months if improved with one to four units and not owned by an entity. If Listing Period exceeds 24 months on a residential 1-4, this Agreement is void, unless Seller is a corporation, LLC, or partnership.) |
| **A(2)** |  | **Listing Price** | _One Million, Five Hundred Ninety-Nine Thousand_ Dollars ($_1,599,000.00_) |
| **B** |  | **Property Specific Listings** | ☐ Manufactured (mobile) home (C.A.R. Form MHLA attached) |
|  |  |  | ☐ Probate, conservatorship, or guardianship (C.A.R. Form PLA attached) |
| **C** |  | **Compensation: NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between Seller and Broker.** See attached Broker Compensation Advisory (C.A.R. Form BCA). | |
| **C(1)** | 4B | **Compensation to Seller's Broker** (only Seller's side of transaction) | _2.500_ % of the listing price AND, if any, _____; OR ☐ $ _____; OR ☐ see attached Broker-created compensation schedule. (% above is based on purchase price if Seller and buyer sign a purchase agreement) |
| **C(2)** | 4C | ☒ **Additional Compensation to Seller's Broker if buyer is unrepresented** (Does NOT apply to dual agency) | _2.500_ % of the purchase price AND, if any, _____; OR ☐ $ _____; OR ☐ see attached Broker-created compensation schedule. (If Broker represents both buyer and Seller, buyer side compensation shall be specified in a separate written agreement between Broker and buyer.) |
| **C(3)** | 4D(2) | **Continuation of Right to Compensation for Broker Identified Prospective Buyers** | The Continuation Period shall be _90_ calendar days after the Listing Period or any extension ("Continuation Period"). |
| **C(4)** | 4F | **Seller Obligation to Pay Previous Brokers** | Previous Listing/Other broker(s): _____ Compensation to above broker(s) owed if Property transferred to: _____ |
| **C(5)** |  | ☐ Broker is paying a referral fee related to the representation of Seller. See attached C.A.R. Form RAD. | |
| **D** |  | **Items Intended to be Included and Excluded** | |
| **D(1)** | 5A | **Items Included** | ☐ _____ ; ☐ _____ ; |
| **D(2)** | 5A | **Excluded Items** | ☐ _____ ; ☐ _____ ; |
| **D(3)** | 5B | **Leased Items:** | ☐ Solar Power System(s); ☐ Alarm System(s); ☐ Propane Tank(s); ☐ Water Softener; ☐ |
| **D(4)** | 5B | **Liened Items:** | ☐ Solar Power System(s); ☐ Windows or Doors; ☐ Heating/Ventilation/Air conditioning ☐ ; ☐ |
| **D(5)** | 5C | (a) Smart Home Features Seller prefers to Include: _____ (b) Smart Home Features Seller prefers to Exclude: _____ | |
| **E** |  | **MLS and Public Marketing** | |
| **E(1)** |  | **Property will be marketed in the following MLS** | Primary _BAREIS_ _____ See C.A.R. Form MLSA. Other(s): _____ |
| **E(2)** | 10 | **Publication of Seller willingness to consider concessions** | If checked below: (i) Seller authorizes Broker to market that Seller is willing to consider offers asking for concessions; and (ii) no amount of the possible concession will be stated in such marketing unless Seller notifies Broker in writing of the amount. ☐ In the MLS(s) listed above, if permitted by that MLS. ☐ In any other marketing outside of the MLS |
| **E(3)** | 12A | ☐ Seller instructs Broker not to take or use photographs in marketing, except as required by MLS rules. | |

© 2025, California Association of REALTORS®, Inc.
**RLA REVISED 12/25 (PAGE 1 OF 7)**

Seller's Initials _CMJ_ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 7)**




Westgate Realty 220 Petaluma Blvd South Petaluma CA 94952          Phone: (707) 530-3276          Fax:          Cynthia McCarn
Michelle Baynes          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Property Address: **8157 Mill Station Road , Sebastopol, CA 95472  95472**                     Date: **May 20, 2026**

| F | | Broker's and Seller's Duties | | |
|---|---|---|---|---|
| F(1) | 7B | Timing of Presentation of Offers | Seller instructs Broker to present all offers received as soon as practicable OR ☐ Offers shall be presented on _____ (date) or ☐ _____ days after the Property is listed as active on the MLS. | |
| F(2) | 7C | Buyer Supplemental Offer Letters (Buyer Letters) | Seller instructs Broker not to present Buyer Letters, OR ☐ Seller instructs Broker to present Buyer Letters. If Seller requests or relies on Buyer Letters, Seller is acting against Broker's advice. | |
| F(3) | 7E | Investigation Reports | ☒ Natural Hazard Disclosure<br>☐ Structural Pest Control,<br>☐ General Property Inspection,<br>☐ Homeowners Association Documents,<br>☒ Preliminary (Title) Report,<br>☐ Roof Inspection,<br>☐ Pool Inspection,<br>☐ Septic/Sewer Inspection,<br>☐ Other: _____ | Seller shall order and pay for any reports selected within **5 (or _____) days** of the Beginning Date of this Agreement |
| G | 21 | Exceptions to Ownership/Title | _____ | |
| H | | ☐ Seller intends to include a contingency to purchase a replacement property as part of any transaction (see C.A.R. Form SPRP). | | |
| I | | Intentionally Left Blank | | |
| J | 13, 14 | Seller Opt Outs | ☐ Keysafe/Lockbox ☐ Signs | |
| K | | Additional Terms | _____<br>_____ | |

3. **ADVISORIES AND ADDENDA:**
   A. **Advisories**
      ☒ Broker Compensation Advisory (C.A.R. Form BCA)
      ☐ REO Advisory Listing (C.A.R. Form REOL)
      ☐ Trust Advisory (C.A.R. Form TA)
      ☐ Other: _____
   B. **Addenda.** The addenda identified below are incorporated into this Agreement
      ☐ Short Sale Listing Addendum (C.A.R. Form SSLA)
      ☐ _____     ☐ _____

4. **COMPENSATION TO BROKER:**

   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker.**

   A. **ADVISORY:** Real estate commissions include all compensation and fees to Broker and are fully negotiable.

   B. **COMPENSATION TO BROKER:** Seller agrees to pay to Broker as compensation for services under this Agreement, the amount specified in **paragraph 2C(1).**

   C. **OPTIONAL ADDITIONAL COMPENSATION FOR UNREPRESENTED BUYER:** Seller agrees to pay Broker the additional amount specified in **paragraph 2C(2)**, if checked, for services rendered only if the buyer is not represented by a real estate agent. If a buyer is represented by a real estate agent, whether working through Broker or another brokerage company, then **paragraph 2C(2)** does not apply.

   D. **COMPENSATION TERMS:** Compensation is earned, and Seller shall pay Broker as follows:
      (1) **Completed Transaction or Seller Default:** If during the Listing Period, or any extension, Broker, any other broker, Seller, or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      OR (2) **Continuation of Right to Compensation for Broker Procured Buyer(s):** If, during the Continuation Period specified in **paragraph 2C(3)**, or the same period of time after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease, or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity:
      ● who physically entered and was shown the Property during the Listing Period or any extension by Broker or any other broker; or
      ● for whom Broker or any other broker submitted to Seller a signed, written offer to acquire, lease exchange or obtain an option on the Property.
      Broker's right to compensation pursuant to this paragraph shall only apply if, prior to expiration of this Agreement or any extension, Broker delivers to Seller a written notice of the names of such Prospective Buyers (C.A.R. Form NPB).
      OR (3) **Seller Interference with Listing:** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.

RLA REVISED 12/25 (PAGE 2 OF 7)                     Seller's Initials [CMJ] _____ / _____

RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 7)

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com         Cynthia Mc Carn

**E. ADDITIONAL COMPENSATION TERMS:**

(1) **Buyer Breach and Seller Recovery of Damages:** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under **paragraph 4** shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection and suit, if any.

(2) **Escrow Instructions:** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 4**, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.

**F. SELLER COMPENSATION OBLIGATIONS TO OTHER BROKERS:**

(1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified in **paragraph 2C(4)**.

(2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the individuals or entities specified in **paragraph 2C(4)**.

(3) If the Property is sold to anyone specified in **paragraph 2C(4)** during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

**G. MAXIMUM LISTING PERIOD: The maximum listing period allowed by law for residential property improved with one to four units is 24 months from the date this Agreement is made. This restriction does not apply if Seller is a corporation, LLC or partnership. It is unlawful to record or file this listing Agreement, or a memorandum or notice thereof, with the county recorder.**

5. **A. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
Seller intends that the items specified in **paragraph 2D** be included or excluded in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the transaction; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B. LEASED OR NOT OWNED ITEMS; LIENED ITEMS:** The items specified in **paragraph 2D(3)** are leased or not owned by Seller and the items specified in **paragraph 2D(4)** have been financed and a lien has been placed on the Property to secure payment. Seller will provide to the buyer, as part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**C. SMART HOME FEATURES:** The smart home features are intended to be included or excluded as specified in **paragraph 2D(5)**.

6. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: **(i)** any Notice of Default recorded against the Property; **(ii)** any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; **(iii)** any bankruptcy, insolvency or similar proceeding affecting the Property; **(iv)** any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and **(v)** any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND SELLER'S DUTIES:**

**A. BROKER RESPONSIBILITY, AUTHORITY AND LIMITATIONS:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in **paragraph 7E** as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B. PRESENTATION OF OFFERS:**

(1) **Strategies Affecting Delayed Offers and Buyer Broker Compensation:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire shortly, hoping that Seller will accept before the presentation date. Additionally, certain buyers may not be able or allowed to pay compensation to a buyer's broker. These buyers may request for seller to pay buyer's broker through a term in the purchase agreement or through a separate compensation agreement. Seller is advised to discuss and consider the best strategy for Seller related to the presentation of offers.

(2) (A) **Seller Instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

OR (B) **Seller Instructs Broker not to Present Offers until a Later Time:** If checked in **paragraph 2F(1)**, Seller has elected to have Broker hold all offers and present them to Seller as specified in **paragraph 2F(1)**. Broker will inform Seller that an offer has come in, but will not submit the offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller. Broker and Seller may amend this instruction by agreeing in writing.

**RLA REVISED 12/25 (PAGE 3 OF 7)**                    Seller's Initials *CMJ* _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com    Cynthia Mc Carn

**C. BUYER SUPPLEMENTAL OFFER LETTERS (BUYER LETTERS):**

   (1) **Advisory Regarding Buyer Letters:** Seller is advised of the practice of many buyers and their agents to include a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters. See C.A.R. Form FHDA for further information.

   (2) (A) **Seller Instructs Broker not to Present Buyer Letters** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

   OR (B) **Seller Instructs Broker to Present Buyer Letters:** If checked in **paragraph 2F(2)**, Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D. SELLER GOOD FAITH:** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 2C(4)**, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E. INVESTIGATIONS AND REPORTS:** Seller agrees, within the time specified in **paragraph 2F(3)**, to order and, when required by the service provider, pay for all reports specified in **paragraph 2F(3)**. If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F. UNDISCLOSED CONDITIONS; INCOMPLETE OR INCORRECT INFORMATION:** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**8. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9. AGENCY RELATIONSHIP:**

**A. DISCLOSURE:** Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD).

**B. SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 4F(3)**.

**C. POSSIBLE DUAL AGENCY:**

   (1) **Disclosure and Consent in a Transaction:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Compensation is not necessarily determinative of agency.

   (2) **Showing Properties:** Seller acknowledges that real estate brokers must have a written agreement in order to work with a buyer before showing properties to that buyer and that some buyers working through Broker may consider or make an offer on Seller's property. Seller consents to Broker entering into a representation agreement with a buyer, and if that buyer makes an offer on Seller's property, Broker will become a dual agent representing both that buyer and Seller.

   (3) **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller – Disclosure and Consent" (C.A.R. Form PRBS).

**D. UNREPRESENTED BUYERS:** If a buyer is interested in viewing Seller's Property is not already represented by a real estate broker, and such buyer refuses to be represented by Broker, Seller authorizes Broker to obtain a signed document from such buyer refusing representation by Broker. Broker shall provide such buyers, at the earliest practicable time, a disclosure of non-representation, such as Buyer Non-Agency (CAR Form BNA) or Open House and Visitor Non-Agency Disclosure and Sign-In (C.A.R. Form OHNA-SI).

**E. CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**RLA REVISED 12/25 (PAGE 4 OF 7)**        Seller's Initials [ _CMJ_ ] / _____



Case: 26-10257   Doc# 22   Filed: 05/20/26   Entered: 05/20/26 20:54:56   Page 6 of 12

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Cynthia Mc Carn

**F.  TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

**10. SELLER CONCESSIONS:**

- Concessions are monetary payments that a seller agrees to contribute towards a buyer's expenses and other costs a buyer is responsible for in the transaction.

- Concessions may include, but are not limited to, costs of escrow or title, lender fees, repairs, inspections, and buyer broker compensation.

- Concessions specified in the MLS must be allowed to be used for any permissible buyer expense or cost and must not specify the concessions are to be used for broker compensation. However, a term in the buyer's offer may specify that the Seller agrees to pay compensation to a buyer's broker. Should Seller agree to do so, Broker does not represent, nor will Broker confirm, that the amount specified is owed by buyer to buyer's broker pursuant to a written agreement that covers Seller's property. In the absence of a separate agreement, Seller's contractual obligation to pay buyer's broker is independent of any obligation between buyer and buyer's broker.

- Concessions identified in an MLS listing are not promises to pay but instead indicate to a buyer that the seller will consider offers asking for concessions. Concessions specified in the MLS are not intended to be binding on Seller unless included in the accepted purchase agreement.

**11. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or injury to person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post a notice disclosing the existence of security devices.

**12. PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A.  OWNERSHIP AND USE OF IMAGES:** In order to effectively market the Property for sale, it is often necessary to provide photographs, virtual tours and other media to buyers. Unless checked in **paragraph 2E(3)**, Seller agrees that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties  may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the internet, neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain  available on the internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post transaction, and for Broker/Agent's business in the future.

**B.  THIRD-PARTY USE AND TAKING OF IMAGES:** Seller acknowledges that prospective buyers and/or other persons coming onto the Property may take photographs, videos, or other images of the Property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**C.  DIGITALLY ALTERED IMAGES:** If Broker uses a digitally altered image ("DAI") in an advertisement or other promotional material to market the Property, Broker must comply with Business & Professions Code § 10140.8 as follows: **(i)** by including a reasonably conspicuous statement located on or adjacent to the DAI stating that the image is altered and also clearly identifying that the original, unaltered image can be accessed via a link to a publicly-accessible internet website, URL, or QR code; and **(ii)** if the DAI is posted on an internet website controlled by Broker or Broker's agent, Broker may satisfy Broker's legal obligation by either complying with **paragraph 12C(i)** above or by including the unaltered version along with the DAI posting. For details on what qualifies as DAI – and for examples of image enhancements that are not considered DAI – see Business & Professions Code § 10140.8.

**13. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

**A.**  Unless checked in **paragraph 2J**, Seller authorizes Broker to install a keysafe/lockbox.

**B.  TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**RLA REVISED 12/25 (PAGE 5 OF 7)**                    Seller's Initials  CMJ  / _____



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com       **Cynthia Mc Carn**

Authentisign ID: 74B00A53-BE54-F111-8FCA-002246335944

Property Address: **8157 Mill Station Road , Sebastopol, CA 95472  95472** _____ Date: **May 20, 2026**

14. **SIGN:** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a FOR SALE/SOLD sign on the Property.

15. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

16. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs except as provided in **paragraph 19A.**

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, Broker or Manager has the right to cancel this Agreement, in writing, within **5 days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

   A. **MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 16.** (4) **Exclusions from this mediation agreement are specified in paragraph 19B.**

   B. **ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

   C. **ARBITRATION ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are specified in **paragraph 2G.**

22. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall deliver to Broker, within **3 days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

# REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

# PROCEED TO NEXT PAGE

**RLA REVISED 12/25 (PAGE 6 OF 7)**

Seller's Initials _CMJ_ / _____

Case: 26-10257   Doc# 22   Filed: 05/20/26   Entered: 05/20/26 20:54:56   Page 8 of 12

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 6 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   **Cynthia Mc Carn**

By signing below, Seller acknowledges that they have received a copy of this Residential Listing Agreement, and they have read, understand, and agree to its terms.

☐ **ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

    (1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

    (2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____

    _____ .

    (3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.

        (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);

        (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

    (4) **Legally Authorized Signer:**

        (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 22** for additional terms.

        (B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .

**SELLER SIGNATURE(S):**

(Signature) By, *Cynthia Mc Carn Jacobsen* _____ Date: 05/20/2026 _____

    Printed name of SELLER: *Cynthia Mc Carn Jacobsen* _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

    Address *8157 Mill Station Road* _____ City *Sebastopol* _____ State *Ca* Zip *95472*

    Email *cajsmiles@gmail.com* _____ Phone # _____

(Signature) By, _____ Date: _____

    Printed name of SELLER: _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

    Address _____ City _____ State _____ Zip _____

    Email _____ Phone # _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Westgate Real Estate* _____ DRE Lic # *01073772* _____

Address *221 Petaluma Blvd. S* _____ City *Petaluma* _____ State *Californi* Zip *94952*

By (Broker/Agent) *Michelle Baynes* _____ *Michelle Baynes* Date 05/20/2026 _____

Tel. *(707)326-3773* _____ E-mail *mchbaynes@aol.com* _____ DRE Lic # *00968226* _____

By (Broker/Agent) _____ Date _____

Tel. _____ E-mail _____ DRE Lic # _____

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**RLA REVISED 12/25 (PAGE 7 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com Cynthia Mc Carn

Authensign ID: 7-A5-B9-7-A5-BB-EBE5-44-FF-11-11-11-8F-FC-A-0002224-EE335594-744



# MULTIPLE LISTING SERVICE ADDENDUM
### (C.A.R. Form MLSA, Revised 12/25)



The following terms and conditions are hereby incorporated in and made a part of the Residential Listing Agreement, ☐ Other _____
_____ ("Agreement"),
dated _**05/20/2026**_, on property known as _**8157 Mill Station Road , Sebastopol, CA 95472  95472**_____
in which _____**Cynthia Mc Carn Jacobsen**_____ is referred to as ("Seller")
and _____**Westgate  Real Estate**_____ is referred to as ("Broker").

**1. MULTIPLE LISTING SERVICE:**
   **A. WHAT IS AN MLS?** An MLS is an organization that brokers join to work cooperatively to benefit their clients by establishing rules of cooperation between real estate agents resulting in detailed information about properties for sale, and any resulting transaction, being made available to other agents and their clients. The MLS manages these property records to ensure their accuracy and fair distribution to agents, appraisers and consumers. The MLS also enforces rules on property access and fair advertising practices. Most residential real estate practitioners in any given area belong to an MLS. An MLS may also be part of a reciprocal or data sharing agreement in which the MLS shares the property and listing details with the real estate practitioners of other neighboring multiple listing services. Real estate agents belonging to other multiple listing services that have reciprocal or data sharing agreements with the MLS also have access to the information submitted to the MLS.
   **B. REALTOR® OWNED MLSs:** Many MLSs are REALTOR® owned and are obligated to comply with the rules promulgated by the National Association of REALTORS® ("NAR"). The rules of those MLSs provide that once a seller's listing has been publicly marketed, as defined in **paragraph 3**, the broker who has taken the listing and who belongs to a REALTOR® owned MLS shall submit information describing the price, terms, and conditions under which the seller's property is offered for sale to the MLS. REALTOR® owned MLSs will not publish offers of compensation from a seller's broker to a buyer's broker.
   **C. WHAT INFORMATION IS PROVIDED TO THE MLS AFTER SALE:** All terms of the transaction, including sales price and, if applicable, financing and concessions, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
   **D. WHAT IS BROKER'S MLS?** Broker belongs to the Multiple Listing Service (MLS) specified in **paragraph 2E(1)** of the Agreement and possibly others.  Broker shall inform Seller if the MLS specified in **paragraph 2E(1)** of the Agreement is not the primary MLS for the geographic area of the Property. When required by **paragraph 3** of this MLSA or by the MLS, Property will be listed with the MLS(s) specified.

**2. BENEFITS OF USING AN MLS; IMPACT OF OPTING PROPERTY OUT OF AN MLS**
   **A. EXPOSURE TO BUYERS THROUGH MLS: Listing property with an MLS** exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who belong to that MLS or a reciprocating MLS. That MLS may further send the details about the property listed to internet sites that post property listings online. Exposure of a seller's property through the MLS is intended to maximize publicity of the seller's property to the marketplace of potential buyers and real estate licensees in anticipation that the more awareness there is that the seller's property is for sale, the more likely it is that the seller can achieve the goals of the listing.
   **B. IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate internet sites that are used by the public to search for property listings; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property; and **(v)** the scope of marketing will consist only of direct one-on-one promotion between the brokers and agents and their respective clients.
   **C. REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price. Limiting exposure of the Property to only the agents and clients of Broker may result in the Property being on the market for a longer period than if it was more widely exposed to the other brokers that belong to the MLS and to the public.
   **D. NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**3. PUBLIC AND PRIVATE MARKETING OF PROPERTY; "CLEAR COOPERATION POLICY":**
   **A.** Unless **paragraph 3E** is checked, the MLS to which Broker will submit the listing has adopted the policy of the NAR which requires that exclusive and seller reserved listings for residential real property with one to four units and vacant lots be submitted to the MLS within 1 business day of any public marketing ("Clear Cooperation").
   **B.** Public marketing includes but is not limited to: Flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public.
   **C.** In guidance from NAR, private marketing permits all agents affiliated with Broker to engage in one-to-one promotion between these agents and their clients and one-to-one promotion with other licensees, who may communicate to their clients. (**NOTE**: Not all MLSs have implemented or follow the NAR guidance, and Seller should discuss with Broker what is allowed under MLS rules.)
   **D.** Different status options may be available for exclusive or seller-reserved listings taken by members of the MLS. Marketing options for listings submitted to the MLS may include: Full Exposure; Delayed Marketing, and if available by the MLS, Coming Soon (or equivalent status). The status option for listings not submitted to the MLS is usually Office Exclusive. See **paragraph 5** for further information.

© 2025, California Association of REALTORS®, Inc.
**MLSA REVISED 12/25 (PAGE 1 OF 3)**

Seller's Initials  / _____



**MULTIPLE LISTING SERVICE ADDENDUM (MLSA PAGE 1 OF 3)**

Westgate Realty, 225 Columbia Blvd South Petaluma CA 94957                                    Phone: 707-226-8732        Fax:                                Cynthia Mc Carn
Michelle Baynes                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Authentisign ID: 74B00A533-BE554-F1111-8FCA-002224633594744

Property Address: **8157 Mill Station Road , Sebastopol, CA 95472  95472**_____ Date: **05/20/2026**_____

**OR E.**  ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** The MLSs used by Broker to market the Property do not have a Clear Cooperation Policy that applies to the Property. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**4. PROPERTY LISTING INFORMATION ON THE INTERNET:** An MLS can send information about properties listed on the MLS to public real estate portals, including those operated by the MLS and additional internet sites operated by brokers and agents. MLS can also syndicate information about listed properties by providing them to various advertising outlets, increasing the exposure of the for-sale property. Seller can instruct Broker to give the MLS instructions to the contrary. Specific information that can be excluded from the internet as permitted by (or in accordance with) the MLS is as follows:

    **A. TOTAL INTERNET OPT OUT:** Seller may prevent the Property from being marketed on the Internet which will keep the Property in the MLS systems only for access by other brokers, their agents, and their customers, but the Property listing will NOT be displayed outside of the MLS systems on 1) real estate portals, 2) Broker's own website or social media, 3) other cooperating MLS broker or agent websites, or 4) syndication advertising sites. Seller understands that this opt out would mean consumers searching for listings on the internet will not see the Property.

    **B. LIMITED INTERNET INFORMATION OPT OUTS:**

        **(1) PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the internet. Seller understands that this opt out would mean consumers searching for listings on the internet may not see the Property or the Property's address in response to their search.

        **(2) FEATURE OPT OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber websites, or electronic displays that display the Property listing, to have the features below. Seller understands **(i)** that these opt outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other internet sites:

            **(A) COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

            **(B) AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

**5. MARKETING OPTIONS:** An MLS may have different categories and options for marketing the property, including, but not limited to, the options in **paragraphs 5A-D:**

    **A. FULL EXPOSURE:**

        **(1)** The Property listing is submitted to the MLS, and it will also be made available to all subscribers and participants of the MLS ("Other Members") who may engage in one-to-one promotion with their existing or past clients, or mass market the Property to current, past, and prospective clients with the seller's consent.

        **(2)** Information about the Property will be syndicated to third party website displays that have an agreement with the MLS.

        **(3)** Other Members can use their own websites to electronically display the MLS data about the Property, and such information may be accessed by current and former clients of the brokerage as well as members of the public ("IDX").

        **(4)** Other Members can electronically display the MLS data about the Property on their own websites, but such information is only available to be seen by the Other Members' clients or those who have registered with the Other Member, but not members of the general public ("VOW").

    **B. DELAYED MARKETING LIMITED EXPOSURE:**

        **(1)** The Property is submitted to the MLS, and it will also be made available to Other Members who may engage in one-to-one promotion with their existing or past clients but, other than specified in (4), may not mass market the Property to current, past, or prospective clients.

        **(2)** Information about the Property will NOT be syndicated to third party website displays that have an agreement with the MLS.

        **(3)** Other Members can NOT use their own IDX websites to electronically display the MLS data about the Property.

        **(4)** Other Members can electronically display the MLS data about the Property on their own VOW websites, but such information is only available to be seen by the Other Members clients or those who have registered with the Other Member, but not members of the general public.

    **C. COMING SOON (OR EQUIVALENT) MARKETING:**
Some MLSs permit a Coming Soon status, but there is no statewide definition of what that status means. Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS.

    **D. OFFICE EXCLUSIVE LIMITED EXPOSURE:** The Property will not be submitted to the MLS for display during the entire listing period, or another time specified by the seller. The seller's broker may engage in one-to-one promotion between any licensee working through the broker and their clients. If allowed by the MLS under the NAR guidance, other members who have received direct one-to-one promotion from a licensee with the listing brokerage firm may themselves engage in one-to-one promotion with their clients but may not mass market the Property to current, past, or prospective clients.

    **E. DAYS ON MARKET:** Regardless of the marketing option chosen, Seller is advised to discuss with Broker how any Days on Market calculations, or any similar tracking fields, work in the MLS in which the Property will be listed for any option above, as well as the potential impact on Seller's property.

**6. PHOTOGRAPHS:** Visitors entering or touring the Property may take photographs or other images ("Images"), and Broker does not have the ability to control or block the taking and use of Images. Seller can instruct Broker to publish information in the MLS limiting the taking of Images to only those persons preparing appraisal or inspection reports. Seller acknowledges that even with a limiting instruction individuals who are either unaware of the MLS limiting instructions or who have disregarded those instructions may take images of the Property.

**MLSA REVISED 12/25 (PAGE 2 OF 3)**                            Seller's Initials  _CMJ_ / _____

**MULTIPLE LISTING SERVICE ADDENDUM (MLSA PAGE 2 OF 3)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com      **Cynthia Mc Carn**

Authentisign ID: 74B0DA5B3-BEE54-F1111-8FCA-0022246335594744

Property Address: **8157 Mill Station Road , Sebastopol, CA 95472  95472**          Date: **05/20/2026**

## SELLER INSTRUCTIONS TO BROKER

Seller instructs Broker to market the Property as follows: (**NOTE:** It is possible that different MLSs may be in different stages of implementing the rules set by the NAR and that not all choices below may apply or be available at the time of the listing.)

1. **PROPERTY LISTING INFORMATION ON THE INTERNET (see paragraph 4 above for more information):**

   A. ☐ **TOTAL INTERNET OPT OUT:** Seller requests that Broker advise the MLS that Seller does not want the Property to be displayed on the internet. Seller understands and acknowledges that if this option is checked, consumers who search for listings on Internet sites may not see information about the Property.

   B. **LIMITED OPT OUT:**

   (1) ☐ Property Address: Seller requests that Broker advise the MLS that Seller does not want the address of the Property to be displayed on the internet. Seller understands and acknowledges that **(i)** if this option is checked, consumers who search for listings on internet sites may not see the Property address in response to their search, and **(ii)** all requests are subject to MLS rules.

   (2) **Features Opt out:** Seller understands and acknowledges that if either or both options below are checked **(i)** this opt-out applies only to the Websites or Electronic Displays of MLS participants and subscribers who are real estate broker and agent members of an MLS; **(ii)** other Internet sites may or may not have the features set forth herein; and **(iii)** neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

   (A) ☐ **Comments and Reviews:** Seller requests that Broker advise the MLS that Seller does not want visitors to MLS participant or subscriber Websites or Electronic Displays that display the Property listing to have **(i)** the ability to write comments or reviews about Seller's Property on those sites; or **(ii)** the ability to link to another site containing such comments or reviews.

   (B) ☐ **Automated Estimate of Value:** Seller requests that Broker advise the MLS that Seller does not want MLS participant or subscriber Websites or Electronic Displays that display the Property listing **(i)** to create an automated estimate of the market value of the Property; or **(ii)** the ability to link to another site containing such automated estimate of the market value of the Property.

2. **MARKETING OPTION: (see paragraph 5 above for more information):** The marketing option selected below shall start at the beginning of the Listing Period or ☐ _____ (date), or ☐ _____ .

   A. **FULL EXPOSURE:** Market the Property with full exposure to the public starting at the beginning of the Listing Period;

   OR B. ☐ **DELAYED MARKETING LIMITED EXPOSURE (only applicable if allowed by MLS):** Market the Property as a Delayed Marketing Limited Exposure. Seller understands that even though the Property will be submitted to the MLS, the Property's data will not be syndicated to third party websites, nor be exposed through Other Member IDX websites. The Property will be available for others to see, tour and inform their clients.

   OR C. ☐ **COMING SOON (only applicable if allowed by MLS):** Market the Property under a Coming Soon policy. Broker has explained the parameters of Coming Soon and any impact it may have on marketing of the Seller's Property.

   OR D. ☐ **OFFICE EXCLUSIVE LIMITED EXPOSURE:** (**NOTE**: Not all MLSs have implemented or follow the NAR guidance, and Seller should discuss with Broker what is allowed under MLS rules.) Market the Property as an Office Exclusive Limited Exposure. Seller instructs Broker to EXCLUDE the Property from full dissemination by the MLS for the time period specified below. Seller certifies that Seller understands that no public marketing (**paragraph 3B**) will occur, and while the property is in office exclusive limited exposure option, the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients. If allowed by the MLS under the NAR guidance, Broker may engage in one-to one communication with other licensees who may communicate with their clients but may not mass market the Property to current, past, or prospective clients. Seller's Property may be shown to clients of agents of the Broker, but not to clients of other brokers, without triggering the obligation to place the property in the MLS. Seller understands and agrees that should any public marketing of the property occur, including showing of the Property to clients of an outside brokerage, the Property listing will be submitted to the MLS within 1 business day.

   (1) Do NOT market the Property to the public during the entire Listing Period unless Seller gives Broker written instruction otherwise;

   OR (2) ☐ Begin marketing the Property to the public under **FULL EXPOSURE** (including through the MLS) on _____ (date).

3. **OTHER INSTRUCTIONS/TERMS:** Seller and Broker may agree to additional terms and items below, but they will be subject to MLS rules and what is permitted in the MLS.

   A. **SELLER PHOTOGRAPH INSTRUCTION:**

   (1) Visitors are not restricted from taking Images of the Property;

   OR (2) ☐ Seller instructs Broker to publish in the MLS that taking of images is limited to those persons preparing appraisal or inspection reports.

   B. **OTHER INSTRUCTIONS/TERMS:** _____
   _____
   _____

**By signing below, Seller acknowledges that they have received a copy of this Multiple Listing Service Addendum, and they have read, understand, and agree to its terms.**

Seller _*Cynthia Mc Carn Jacobsen*_____ **Cynthia Mc Carn Jacobsen** Date 05/20/2026

Seller _____ Date _____

Real Estate Broker (Listing Firm) **Westgate  Real Estate**

By _*Michelle Baynes*_____ **Michelle Baynes** DRE Lic# **00968226**_____ Date 05/20/2026

By _____ DRE Lic# _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**MLSA REVISED 12/25 (PAGE 3 OF 3)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com          Cynthia Mc Carn

EQUAL HOUSING OPPORTUNITY